# Removal
# Exhibit A

ROYAUME DU MAROC
MINISTRE DE L'INTERIEUR
DIRECTION GENERALE DE LA
SURTE NATIONALE
PREFECTURE DE POLICE DE
CASABLANCA
DISTRICT CASA – ANFA

RECEPISSE DE RESTITUTION

JE SOUSSIGNE

PRENOM ET NOM : _Akil Nachida pour attijariwafa bank_

TITULAIRE DE LA CARTE NATIONALE N° _C R6 713360_

DEMEURENT _112 avenue Hassan II_

DECLARE AVOIR REÇU PAR L'INTERMEDIAIRE DE L'agent de police N° ..............

EN FONCTION ARRDT ROUDANI / DISTRICT CASA ANFA . LA FLIE DE JUSTICE N° _19 و19_

EMANANT DE MR ...........................................

EN DATE DU ...................

**Attijariwafa bank**
**Casablanca**
**2 5 MARS 2019**
**Conseil Juridique**

S/ L'AGENT DE POLICE

S/ L'INTERESSE

Attijariwafa bank
Casablanca
2 6 MARS 2019
Conseil Juridique Groupe

CASABLANCA LE : ...................

VU ET TRANSMIS

LE COMMISSAIRE DE POLICE
CHEF ARRDT ROUDANI / DISTRICT
CASA – ANFA

## REQUEST
## FOR SERVICE ABROAD OF JUDICIAL OR
## EXTRAJUDICIAL DOCUMENTS

DEMANDE AUX FINS DE SIGNIFICATION OU DE NOTIFICATION A L'ETRANGER
D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE

**Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters, signed at The Hague, the 15th of November 1965.**

Convention relative à la signification et à la notification à l'etranger des actes judiciaires ou extrajudiciaires en
matiere civile ou commerciale signee à La Haye le 15 novembre 1965

| | |
|---|---|
| **Identity and address of the applicant**<br>Identite et adresse du requerant | **Address of receiving authority**<br>Adresse de l'autorité destinataire |
| James A. Varner, Sr., Esq.<br>Debra Tedeschi Varner, Esq.<br>McNeer, Highland, McMunn and Varner, L.C.<br>Empire Building - 400 West Main Street<br>Clarksburg, West Virginia 26302-2040<br>Telephone: (304) 626-1100<br>Facsimile: (304) 623-3035<br>jvarner@wvlawyers.com<br>dtvarner@wvlawyers.com | Ministère de la Justice<br>Direction des Affaires Civiles<br>Service de l'Entraide Judiciaire en Matière Civile<br>Palais de la Mamounia<br>RABAT<br>numéro de téléphone/telephone number: +212<br>(0) 537 213 675<br>numéro de télécopie/fax number  +212 (0) 537<br>705 914<br>courriel/e-mail: entraidejcivil@justice.gov.ma |

The undersigned applicant has the honour to transmit – in duplicate – the documents listed
below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt
service of one copy thereof on the addressee, i.e.:

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire - à l'autorité destinataire les
documents ci dessous enumeres en la priant, conformement à l'article 5 de la Convention précitee, d'en faire
remettre sans retard un exemplaire au destinataire, à savoir :

**(identity and address)**
(identite et adresse)

DEFENDANT
Attijariwafa Bank
2 Boulevard Moulay Youssef
Casablanca 20 000
Morocco

☒ a) **in accordance with the provisions of sub-paragraph a) of the first paragraph of
Article 5 of the Convention\***
selon les formes legales (article 5, alinea premier, lettre a))\*

☐ b) **in accordance with the following particular method (sub-paragraph b) of the first
paragraph of Article 5)\*:**
selon la forme particulière suivante (article 5, alinea premier, lettre b)\*

☐ c) **by delivery to the addressee, if he accepts it voluntarily (second paragraph of
Article 5)\***
le cas echeant, par remise simple (article 5, alinéa 2)\*

The authority is requested to return or to have returned to the applicant a copy of the documents -
and of the annexes\* - with the attached certificate.

Cette autorité est priée de renvoyer ou de faire renvoyer au requerant un exemplaire de l'acte  et de ses annexes\*
avec l'attestation ci-jointe

*List of documents / Enumeration des pieces*

- Summons (with Arabic translation)
- Civil Case Information Statement (with Arabic translation)
- Complaint & Demand for Jury Trial (with Arabic translation)
- Translator's Certification (in English and Arabic)

\* if appropriate / s'il y a lieu

Permanent Bureau July 2007

Done at  Clarksburg, West Virginia, USA

The  __20__ November 2018

**Signature and/or stamp**
Signature et  ou cachet

James A. Vaner, Jr.

# CERTIFICATE
## ATTESTATION

The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention.

[ ]  **1. that the document has been served**
    que la demande a été exécutée*

  — the **(date)** / le (date):

  — at **(place, street, number):**
    à (localité, rue, numéro)

1. Insert the date when the document was served

2. Insert the place, street and number where the document was served

  — in one of the following methods authorised by Article 5:
    dans une des formes suivantes prévues à l'article 5 :

☐  *a)*  **in accordance with the provisions of sub-paragraph a) of the first paragraph of Article 5 of the Convention***
    selon les formes légales (article 5, alinéa premier, lettre a))*

☐  *b)*  **in accordance with the following particular method*:**
    selon la forme particulière suivante*

☐  *c)*  **by delivery to the addressee, if he accepts it voluntarily***
    par remise simple*

The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à

**Identity and description of person:**
Identité et qualité de la personne

3. Insert the identity and description of the person who received the documents

**Relationship to the addressee (family, business or other):**
Liens de parenté, de subordination ou autres, avec le destinataire de l'acte

4. Insert the relationship to the addressee of the person who received the documents

☐  **2. that the document has not been served, by reason of the following facts*:**
    que la demande n'a pas été exécutée, en raison des faits suivants*

5. Insert facts/reasons why the document has not been served

☐  **In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*.**
    Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint*

**Annexes** / Annexes

**Documents returned:**
Pièces renvoyées :

Insert a list of the documents that are being returned

**In appropriate cases, documents establishing the service:**
Le cas échéant, les documents justificatifs de l'exécution :
    If appropriate, a list

Insert a list of the documents that establish that service has been effected

**Done at** / Fait à  Insert the location where you signed the Certificate

**Signature and/or stamp.**
Signature et / ou cachet

**The** , le  Insert the date on which you signed the Request (spelt out in full)

## WARNING
### AVERTISSEMENT

**Identity and address of the addressee**
Identité et adresse du destinataire
1. Insert the name and address of intended recipient (and capacity, if not served in private capacity)

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

### TRÈS IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS LES « ÉLÉMENTS ESSENTIELS DE L'ACTE » VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MÊME DU DOCUMENT IL PEUT ÊTRE NÉCESSAIRE DE DEMANDER UN AVIS JURIDIQUE

SI VOS RESSOURCES SONT INSUFFISANTES RENSEIGNEZ VOUS SUR LA POSSIBILITÉ D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITÉS D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE DU DOCUMENT PEUVENT ÊTRE ADRESSÉES A

2. Insert the name, address, telephone number and e-mail address of the authority or organisation in your State that is most qualified to give recipient full details on the availability of legal aid or advice

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or in one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the document is to be sent, or in English or French.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française se et en langue anglaise et le cas échéant en outre dans la langue ou l'une des langues officielles de l'État d'origine de l'acte Les blancs pourraient être remplis soit dans la langue de l'État où le document doit être adressé soit en langue française soit en langue anglaise

## SUMMARY OF THE DOCUMENT TO BE SERVED
### ELEMENTS ESSENTIELS DE L'ACTE

Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters, signed at The Hague, the 15th of November 1965 (Article 5, fourth paragraph).

Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou
extrajudiciaires en matière civile ou commerciale, signée à La Haye le 15 novembre 1965
(article 5, alinéa 4)

| | |
|---|---|
| **Name and address of the requesting authority:**<br>Nom et adresse de l'autorité requérante | James A. Varner, Sr., Esq.<br>Debra Tedeschi Varner, Esq.<br>McNeer, Highland, McMunn and Varner, L.C.<br>Empire Building - 400 West Main Street<br>Clarksburg, West Virginia 26302-2040<br>Telephone (304) 626-1100<br>Facsimile (304) 623-3035<br>jvarner@wvlawyers.com<br>dtvarner@wvlawyers.com |
| **Particulars of the parties'**<br>Identité des parties' | **PLAINTIFF**<br>**United Coals, Inc.**<br>231 South Third Street<br>Clarksburg, West Virginia 26301<br>USA<br><br>**DEFENDANT**<br>**Attijariwafa Bank**<br>2 Boulevard Moulay Youssef<br>Casablanca 20 000<br>Morocco |

* If appropriate, identity and address of the person interested in the transmission of the document
S'il y a lieu, identité et adresse de la personne intéressée à la transmission de l'acte

☑ **JUDICIAL DOCUMENT****
ACTE JUDICIAIRE**

| | |
|---|---|
| **Nature and purpose of the document:**<br>Nature et objet de l'acte | The documents commence a lawsuit in Clarksburg, West Virginia, USA, by the plaintiff against the defendant |
| **Nature and purpose of the proceedings and, when appropriate, the amount in dispute:**<br>Nature et objet de l'instance, le cas échéant, le montant du litige | In the lawsuit, the plaintiff asks the court for money damages against the defendant. The amount in dispute is at least US$ 7 million |
| **Date and Place for entering appearance**:**<br>Date et lieu de la comparution** | An appearance must be entered in the Circuit Court of Harrison County, 301 West Main Street, Clarksburg, WV 26301 USA, within twenty (20) days after service |
| **Court which has given judgment**:**<br>Juridiction qui a rendu la décision** | n/a |
| **Date of judgment**:**<br>Date de la décision** | n/a |
| **Time limits stated in the document**:**<br>Indication des délais figurant dans l'acte** | An answer to the complaint must be served on plaintiff's counsel within twenty (20) days after service |

** If appropriate

☐ **EXTRAJUDICIAL DOCUMENT****
ACTE EXTRAJUDICIAIRE**

Formulaire (suivant July, 2015)

**Nature and purpose of the document:**
Nature et objet de l'acte

11  Describe the nature and purpose of the
document

**Time-limits stated in the document\*\*:**
Indication des délais figurant dans l'acte\*\*

12  Specify limits

\*\* if appropriate

S U M M O N S
CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

UNITED COAL INC.


                    Plaintiff


v.                          18-C-272        JAMES A. MATISH

ATTIJARIWAFA BANK
2 BOULEVARD MOULAY YOUSSEF
CASABLANCA

                    Defendant

To the Above-Named Defendant(s):
IN THE NAME OF THE STATE OF WEST VIRGINIA,

     you are hereby summoned and required to serve upon
     JAMES A VARNER
     Plaintiff's attorney whose address is
     PO DRAWER 2040
     CLARKSBURG, WV  26301


an answer, including any related counter-claim you may have, to the

complaint filed against you in the above-styled civil action, a true

copy of which is herewith delivered to you. You are required to serve

your answer within 20 days after service of this summons upon you,

exclusive of the day of service.

If you fail to do so, judgement by default will be taken

against you for the relief demanded in the complaint and you will be

thereafter barred from asserting in another action any claim you may

have which must be asserted by counter claim in the above-styled

civil action.

DATED: 11/05/18

                         ALBERT F.MARANO, CLERK
                         Harrison County Circuit Court
                         By: _C. L. Sharpe____ ,Deputy

أَمر استدعاء

في دائرة محكمة مقاطعة هوريسون غرب فرجينيا

يونايتد كولز إنك

المدعي

ضد                                          18-C-272                   جايمس أيه ماتيش

التجاري وفا بنك
2 بوليفارد مولاي يوسف، الدار البيضاء

المدعى عليه

إلى المدعى عليه المذكور أعلاه:
باسم ولاية غرب فرجينيا،

ندعوك ونطالبك بأن تقدم إلى
جايمس أيه فارنر
وكيل المدعي الكائن عنوانه في
ص.ب: دراوار 2040
كلاركسبيرج، غرب فرجينيا 26301

رد، يتضمن أي ادعاء مضاد ذي صلة قد يقدم من جانبك، على الشكوى المقدمة ضدك في الدعوى المدنية الموضحة أعلاه، والتي تم إرفاق نسخة حقيقية منها مع هذا الأمر لتسليمها إليك. ويتعين عليك تقديم ردك خلال 20 يوما من تاريخ تبليغ هذا الأمر إليك، ولا تشمل هذه المدة يوم التبليغ.

وفي حالة عدم قيامك بذلك، فسوف يصدر حكم غيابي ضدك بالتعويض المطلوب في الشكوى وستُمنع بعد ذلك من أن تؤكد في أي دعوى أخرى أي مطالبة يجب عليك تقديمها في صورة ادعاء مضاد في الدعوى المدنية المذكورة أعلاه.

التاريخ: 11/05/18

ألبيرت أف مارانو، كليرك
محكمة دائرة مقاطعة هاريسون

التوقيع: _____ [يوجد توقيع] _____ ، النائب

IN THE CIRCUIT COURT OF ___**HARRISON**___ COUNTY, WEST VIRGINIA

## CIVIL CASE INFORMATION STATEMENT
### (Civil Cases Other than Domestic Relations)

**I. CASE STYLE:**

**Plaintiff(s)**

UNITED COALS, INC.

Case No. 18-C- 272-3

Judge: Matish

**vs.**

**Defendant(s)**

ATTIJARIWAFA BANK
Name

2 Boulevard Moulay Youssef
Street Address

Casablanca 20 000 Morocco
City, State, Zip Code

| Days to Answer | Type of Service |
|---|---|
| 30 | via Hague Service Convention |

**II. TYPE OF CASE:**

- [✓] General Civil
- [ ] Mass Litigation *[As defined in T.C.R. 26.04(a)]*
  - [ ] Asbestos
  - [ ] FELA Asbestos
  - [ ] Other:
- [ ] Habeas Corpus/Other Extraordinary Writ
- [ ] Other:

- [ ] Adoption
- [ ] Administrative Agency Appeal
- [ ] Civil Appeal from Magistrate Court
- [ ] Miscellaneous Civil Petition
- [ ] Mental Hygiene
- [ ] Guardianship
- [ ] Medical Malpractice

**III. JURY DEMAND:** [✓] Yes [ ] No  CASE WILL BE READY FOR TRIAL BY (Month/Year): 01 / 2020

**IV. DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS?**

[ ] Yes [✓] No

**IF YES, PLEASE SPECIFY:**
- [ ] Wheelchair accessible hearing room and other facilites
- [ ] Reader or other auxiliary aid for the visually impaired
- [ ] Interpreter or other auxiliary aid for the deaf and hard of hearing
- [ ] Spokesperson or other auxiliary aid for the speech impaired
- [ ] Foreign language interpreter-specify language: _____
- [ ] Other: _____

Attorney Name: James A. Varner, Sr./Debra Tedeschi Varner

Firm: McNeer, Highland, McMunn and Varner, L.C.

Address: 400 W Main Street/P.O. Drawer 2040, Clarksburg, WV 26301

Telephone: (304) 626-1100

[ ] Proceeding Without an Attorney

**Representing:**
- [✓] Plaintiff
- [ ] Defendant
- [ ] Cross-Defendant
- [ ] Cross-Complainant
- [ ] 3rd-Party Plaintiff
- [ ] 3rd-Party Defendant

Original and _____ copies of complaint enclosed/attached

Dated: 11 / 05 / 2018     Signature: _____

SCA-C-100: Civil Case Information Statement (Other than Domestic Relations)     Revision Date: 12/2015

في دائرة محكمة_____     مقاطعة هوريسون____     غرب فرجينيا____

بيان تفاصيل الدعوى المدنية
(الدعاوى المدنية بخلاف الدعاوى المتعلقة بالعلاقات الأسرية)

| | |
|---|---|
| **I.   نوع الدعوى:** | دعوى رقم C-18- [نص بخط اليد:] 272-3 |
| المدعي | القاضي:   [يوجد توقيع] |
| يونايتد كولز إنك | |
| | |
| ضد | |
| **المُدعى عليه** | نوع التبليغ |
| التجاري وفا بنك | بموجب اتفاقية لاهاي لتبليغ الوثائق |
| الاسم | الأيام المتاحة للرد 30 |
| 2 بوليفارد مولاي يوسف | |
| عنوان الشارع | |
| الدار البيضاء، 20 000 المغرب | |
| المدينة، الدولة، الرمز البريدي | |

[نص عمودي على اليسار: 4:10 بعد الظهر 2018 مايو 15 تم تقديمها]

**II.   نوع الدعوى:**

☑ مدنية عامة
☐ دعوى جماعية [كما هو معرف في قاعدة محكمة المحاكمة رقم 26.04(1)]
☐ اسبستوس
☐ فيلا اسبستوس
☐ أخرى _____
☐ أمر بالمثول أمام المحكمة / أمر استثنائي آخر
☐ أخرى _____

☐ تبني
☐ استئناف وكالة إدارية
☐ استئناف مدني من محكمة الصلح
☐ عريضة مدنية متنوعة
☐ الصحة العقلية
☐ حضانة
☐ خطأ طبي

**III.  طلب هيئة المحلفين:** ☑ نعم ☐ لا     سوف تكون الدعوى جاهزة للمحاكمة بحلول (شهر/ سنة): 01 / 2020

**IV.  هل تحتاج أن أنت أو أي من عملائك أو الشهود التابعين لك في هذه القضية متطلبات خاصة؟**

☐ نعم ☑ لا

إذا كان الجواب نعم، يُرجى تحديد ذلك:
☐ غرفة جلسات يمكن الوصول إليها بالكرسي المتحرك ومرافق أخرى
☐ قارئ أو غيرها من أدوات المساعدة الإضافية للمكفوفين
☐ مترجم أو أدوات مساعدة إضافية أخرى لمن يعانون من الصمم وصعوبة السمع
☐ متحدث أو أدوات مساعدة إضافية أخرى لمن يعانون من صعوبة في التحدث
☐ مترجم لغة أجنبية - يُرجى تحديد اللغة: _____
☐ أخرى: _____

| | |
|---|---|
| اسم المحامي: | جايمس أبه فارنر، ديبرا تيديشي فارنر |
| شركة المحاماة: | ماكنير، هايلاند، ماكماس أند فارنر إل إس سي |
| العنوان: | 400 دابلو ماين ستريت / ص.ب: دراوار 2040، كلاركسبيرج، دابليو في 26301 |
| هاتف: | (304) 626-1100 |

☑ يمثل:
☑ مدعي       ☐ مدعى عليه
☐ مدعي عليه بالتقابل   ☐ مدعي بالتقابل
☐ مدعي خارجي   ☐ مدعى عليه خارجي

☐ اتخاذ الإجراءات بدون وكيل

النسخة الأصلية _____ ونسخ من الشكوى المرفقة.

التاريخ: 11 / 05 / 2018     التوقيع: [يوجد توقيع]

**SCA-C-100:** بيان تفاصيل الدعوى المدنية (بخلاف الدعاوى المتعلقة بالعلاقات الأسرية)

تاريخ المراجعة: 12/2015

IN THE CIRCUIT COURT FOR HARRISON COUNTY, WEST VIRGINIA

UNITED COALS, INC.,

                          Plaintiff,

v.                                              Civil Action No.  18-C-272-3

ATTIJARIWAFA BANK
2 Boulevard Moulay Youssef
Casablanca 20 000
Morocco,

                          Defendant.

## COMPLAINT & DEMAND FOR JURY TRIAL

United Coals, Inc. (**"United Coals"**), by counsel, for its complaint against Attijariwafa

Bank (**"Attijariwafa Bank"**), alleges:

### PARTIES

1.      Plaintiff United Coals is a corporation organized and existing under the laws of

West Virginia and has its principal place of business in Clarksburg, West Virginia.

2.      On October 10, 2013, United Coals named Ricardo G. Leon, a resident of

Morocco, as its sole representative in Morocco for purposes of procuring coal purchase contracts

from the government of Morocco and for pursuing such other business activities in Morocco as

might benefit United Coals.

3.      Upon information and belief, defendant Attijariwafa Bank is a non-resident

banking corporation organized and existing under the laws of the Kingdom of Morocco and has

its headquarters in Casablanca, Morocco.

## JURISDICTION & VENUE

4.      This court has jurisdiction of the claim alleged at law pursuant to West Virginia Code § 51-2-2(b) because the amount in controversy of the claim, excluding interest, exceeds $7,500.00, and has jurisdiction of the claim alleged in equity pursuant to West Virginia Code § 51-2-2(d).

5.      Venue is proper in Harrison County pursuant to West Virginia Code § 56-1-1(a)(1) because plaintiff's claims arose in such county.

## FACTS COMMON TO ALL COUNTS

### The Coal-Supply Contracts with ONEE

6.      On or about November 27, 2013, the Electricity Branch of the Moroccan National Office of Electricity and Drinking Water ("**ONEE**") awarded Contract No. SC 94 415 F5 ("**ONEE Contract No. 415**") to United Coals; and on or about December 18, 2013, ONEE awarded Contract No. SC 94 425 F5 ("**ONEE Contract No. 425**") to United Coals (collectively, the "**ONEE Contracts**").

7.      Pursuant to ONEE Contract No. 415, United Coals agreed to deliver 192,000 metric tons (± 10%) of steam coal originating in the United States to the Port of Casablanca in six cargoes.

8.      Pursuant to ONEE Contract No. 425, United Coals agreed to deliver 96,000 metric tons (± 10%) of steam coal originating in the United States to the Port of Casablanca in three cargoes.

9.      Pursuant to each of the ONEE Contracts, ONEE agreed to pay United Coals $93.00 per metric ton (freight included), which gave the ONEE Contracts a combined value to United Coals of $26,784,000.

10.     Pursuant to each of the ONEE Contracts, ONEE agreed to pay United Coals by irrevocable documentary credit opened by ONEE at a prime bank in favor of United Coals, each such irrevocable documentary credit to be payable against United Coals' presentation of specified documents, including, among others, commercial invoices, bills of lading, certificates of origin, and certificates of analysis.

11.     As of December 30, 2013, United Coals expected ONEE would apply to Attijariwafa Bank, a Moroccan bank, for issuance of the letters of credit for payment of coal cargoes under the ONEE Contracts.

12.     On December 30, 2013, on ONEE's recommendation, United Coals advised Attijariwafa Bank that United Coals had been awarded the two ONEE Contracts and expressed its wish to open an account at the bank, specifying that "[t]he purpose of this account will be to manage our Letter of Credit with ONEE," and that "[t]his account needs to have capabilities to send and receive international wire transfers to and from the United States of America," and naming Ricardo G. Leon as United Coals' authorized representative, including for purposes of opening and transacting in the requested Attijariwafa Bank account.

13.     For reasons unknown to United Coals, ONEE later determined it should apply to a different Moroccan bank for the necessary letters of credit.

**The AEC Charter Party**

14.     On or about January 24, 2014, United Coals entered into a voyage charter party ("**Charter Party**") with Agriculture & Energy Carriers, Ltd. ("**AEC**"), a Bahamas-based broker acting as disponent owner, for a vessel (to be nominated) to transport 31,500 metric tons of coal from the Kinder Morgan International Marine Terminals, Myrtle Grove (near New Orleans),

- 3 -

Louisiana, to Casablanca, Morocco, which was to be the first shipment of steam coal pursuant to ONEE Contract No. 415.

15.     The Charter Party required United Coals to pay AEC demurrage at the rate of $22,000 per day.

16.     On February 6, 2014, AEC nominated the M/V *Mardinik* ("***Mardinik***") to perform the Charter Party.

17.     On February 14, 2014, the *Mardinik* tendered its notice of readiness at Myrtle Grove, Louisiana, for the loading of cargo pursuant to the Charter Party.

18.     The *Mardinik* started incurring demurrage on or about February 16, 2014.

19.     At all relevant times, United Coals kept Attijariwafa Bank advised of the status of the Charter Party and the *Mardinik*.

### Emerald International Corporation

20.     Emerald International Corporation ("**Emerald**") is a Kentucky-based coal supplier.

21.     Emerald and United Coals often purchase and sell coal to each other to facilitate their respective performance of coal-supply contracts.

22.     At the beginning of 2014, Emerald owned a quantity of steam coal located near New Orleans, Louisiana, suitable for United Coals' use in fulfilling the first cargo of steam coal to be delivered pursuant to ONEE Contract No. 415 ("**Emerald's Louisiana Coal**").

23.     On March 14, 2014, Emerald confirmed to United Coals that it would load the *Mardinik* at New Orleans upon United Coals' execution of a coal purchase contract and upon receipt of an acceptable stand-by letter of credit covering payment for the coal.

- 4 -

24.     At all times from Emerald's March 14, 2014, confirmation until relations between United Coals and Attijariwafa Bank broke down in late May 2014 (as alleged further below), Emerald stood ready to sell United Coals 32,000 metric tons of Emerald's Louisiana Coal for United Coals' use as the first cargo of steam coal to be furnished by United Coals to ONEE pursuant to ONEE Contract No. 415.

**LC # 316**

25.     On February 5, 2014, to pay for the first cargo of coal under ONEE Contract No. 415, ONEE applied to Banque Centrale Populaire ("**BCP**"), a Moroccan bank, for an irrevocable confirmed documentary credit valid until July 31, 2014, in the amount of $2,976,000 naming United Coals as beneficiary.

26.     On February 6, 2014, BCP issued its irrevocable documentary credit number 800501403l6 in the amount of $2,976,000.00, expiring July 31, 2014, and naming United Coals as beneficiary ("**LC # 316**").

27.     LC # 316 named Banque Marocaine du Commerce Extérieur ("**BMCE**") as the "Available With . . . By . . ." bank (field 41A) and as the "Advise Through" bank (field 57A).

28.     LC # 316 was payable upon United Coals' presentation to BMCE of specified documents (field 46A), including, among others, commercial invoices, bills of lading, certificates of origin, and certificates of analysis.

29.     LC # 316 did not specify a latest date of shipment, but stated that shipment was permissible during the validity of the documentary credit (field 44D).

30.     The same day (February 6, 2014), ONEE advised United Coals of BCP's issuance of LC # 316.

**LC # 316 - Amendment No. 1**

31.     On February 26, 2014, ONEE requested BCP to amend LC # 316 to make it both irrevocable and transferable.

32.     Upon information and belief, ONEE requested transferability of LC # 316 so that United Coals could use LC # 316 and its proceeds to pay Emerald for the first cargo of coal under ONEE Contract No. 415.

33.     On February 27, 2014, BCP amended LC # 316 to make it both irrevocable and transferable and the same day notified BMCE of the amendment.

**Attijariwafa Bank Account No. 8033**

34.     On or about March 28, 2014, United Coals opened dollar currency account number 0541 R 000428033 at Attijariwafa Bank's Casablanca, Morocco, branch ("**8033 Account**") for the purpose of receiving LC # 316 and its proceeds and transferring a portion of the proceeds to Emerald for payment of the first cargo of coal under ONEE Contract No. 415.

**LC # 316 - Amendment No. 2**

35.     On April 2, 2014, BCP again amended LC # 316, this time changing the "Advise Through" bank (field 57A) from BMCE to Attijariwafa Bank.

36.     BCP's amendment was expressly associated with United Coals' 8033 Account at Attijariwafa Bank.

37.     Upon information and belief, the reason for the amendment was that, by the date of this amendment, BCP and ONEE knew that BMCE had declined to serve as the advising bank in relation to LC # 316.

**United Coals' Funds-Transfer Order**

38.     The same day (April 2, 2014), at Attijariwafa Bank's request, United Coals submitted an order to Attijariwafa Bank directing the bank to transfer $2,496,000 from United Coals's 8033 Account to Emerald's Detroit, Michigan, Comerica Bank account ("**Funds-Transfer Order**").

39.     Attijariwafa Bank proposed the Funds-Transfer Order as a means for United Coals to use proceeds of LC # 316 to pay Emerald for the first cargo of steam coal to be delivered under ONEE Contract No. 415.

40.     On April 4, 2014, Attijariwafa Bank advised Emerald that once funds under LC # 316 were released to United Coals' 8033 Account, Emerald would be paid $2,496,000 in accordance with the Funds-Transfer Order.

41.     On April 7, 2014, in reliance on Attijariwafa Bank's April 4, 2014, advice, Emerald confirmed to United Coals that Emerald would load the coal cargo aboard the *Mardinik* upon United Coals' execution of a coal purchase contract and receipt of an acceptable stand-by letter of credit covering payment for the coal.

**BCP Cancels LC # 316**

42.     For reasons unknown to United Coals, at an unknown time between February 27 and April 10, 2014, BCP cancelled LC # 316.

**BCP Issues LC # 1080**

43.     On April 10, 2014, to pay for the first cargo of coal under ONEE Contract No. 415, and intending to annul and replace LC # 316 and its two amendments, ONEE applied to BCP for issuance of a substitute irrevocable confirmed documentary credit valid until July 31, 2014, in the amount of $2,976,000 naming United Coals as beneficiary.

- 7 -

44.     On April 10, 2014, BCP issued its substitute irrevocable documentary credit number 80050141080 in the amount of $2,976,000.00, expiring July 31, 2014, and naming United Coals as beneficiary ("**LC # 1080**").

45.     LC # 1080 named Attijariwafa Bank as the "Available With . . . By . . ." bank (field 41A) and as the "Advise Through" bank (field 57A).

46.     LC # 1080's designation of Attijariwafa Bank as the "Advise Through" bank was associated with United Coals' Attijariwafa Bank 8033 Account.

47.     LC # 1080 specified April 30, 2014, for the latest date of shipment (field 44C).

48.     LC # 1080 was payable upon United Coals' presentation to Attijariwafa Bank of specified documents (field 46A), including, among others, commercial invoices, bills of lading, certificates of origin, and certificates of analysis.

49.     On April 10, 2014, BCP advised Attijariwafa Bank of the issuance of LC # 1080.

50.     On April 10, 2014, Attijariwafa Bank notified United Coals of BCP's issuance of LC # 1080.

51.     Upon information and belief, Attijariwafa Bank assigned its own reference number ELC00007397 to LC # 1080.

52.     On April 10, 2014, AEC confirmed that the *Mardinik* remained available for loading in New Orleans and was awaiting United Coals' notice to start loading.

**Attijariwafa Bank Refuses to Advise LC # 1080 to United Coals**

53.     The following day (April 11, 2014), Attijariwafa Bank informed BCP that Attijariwafa Bank could not advise LC # 1080 to the beneficiary (United Coals) because the beneficiary was a non-resident, that Attijariwafa Bank considered BCP's April 10, 2014,

message (giving notice of BCP's issuance of LC # 1080) to be null and void, and that Attijariwafa Bank was closing its file.

54.     United Coals did not learn until April 13, 2014, of Attijariwafa Bank's refusal to proceed with LC # 1080.

**Attijariwafa Bank Promises to Issue a Guaranty**

55.     Despite Attijariwafa Bank's declared refusal to proceed with LC # 1080, three days later (April 14, 2014) Attijariwafa Bank advised United Coals that the bank was working on a letter of guaranty requested by United Coals for Emerald's benefit, and that "[w]e may possibly provide it to you by tomorrow."

56.     Attijariwafa Bank's April 14, 2014, message reasonably led United Coals to believe that, despite the bank's April 11, 2014, message, the bank was:  (a) still willing to proceed with LC # 1080; (b) willing to facilitate the first cargo shipment under ONEE Contract No. 415 by issuing its letter guaranteeing United Coals' payment to Emerald; and (c) was planning to provide its guaranty the following day.

57.     In reasonable reliance on Attijariwafa Bank's message, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

58.     Attijariwafa Bank did not provide the promised letter of guaranty on April 15, 2014, or at any time thereafter.

**Events of April 25, 2014**

59.     On April 25, 2014, Emerald issued its invoice number EE8569 to United Coals in the amount of $2,496,000 for 32,000 metric tons of steam coal representing the first shipment under ONEE Contract No. 415.

60.     The same day (April 25, 2014), re-using United Coals' already-signed Funds-Transfer Order, Attijariwafa Bank again accepted United Coals' order to transfer $2,496,000 from United Coals' 8033 Account to Emerald's Detroit, Michigan, Comerica Bank account.

61.     The same day (April 25, 2014), Attijariwafa Bank nullified and voided its April 11, 2014, message to BCP, thereby agreeing to proceed with LC # 1080.

62.     The same day (April 25, 2014), Attijariwafa Bank confirmed to United Coals the bank's agreement to proceed with LC # 1080.

**Attijariwafa Bank Advises LC # 1080 to United Coals**

63.     On April 28, 2014, Attijariwafa Bank advised LC # 1080 to United Coals as beneficiary.

64.     As of April 28, 2014, Attijariwafa Bank knew that United Coals had only two days remaining under LC # 1080 to ship the first cargo of coal under ONEE Contract No. 415.

**Attijariwafa Bank Announces Conditions
for Executing the Funds-Transfer Order**

65.     The same day (April 28, 2014), Attijariwafa Bank sent United Coals a letter attesting that Attijariwafa Bank had United Coals' Funds-Transfer Order ("**Attestation Letter**").

66.     The Attestation Letter for the first time announced three conditions for executing the Funds-Transfer Order:  the order would be executed (a) as soon as LC # 1080 was realized and settled, (b) and after verification that the transaction documents complied with the terms and

regulations in force, and (c) provided that the balance in United Coals' 8033 Account was sufficient.

67.     On April 28, 2014, Attijariwafa Bank forwarded copies of the Funds-Transfer Order and the Attestation Letter to Emerald and invited Emerald to contact Attijariwafa Bank if Emerald had questions or needed more information.

68.     In reasonable reliance on Attijariwafa Bank's:  (a) agreement to proceed with LC # 1080, (b) advice of LC #1080, (c) issuance of the Attestation Letter, and (d) forwarding of the Funds-Transfer Order and Attestation Letter to Emerald, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

69.     On April 30, 2014, the latest date for shipment specified on LC # 1080 expired.

### Attijariwafa Bank Proposes a Line of Credit

70.     On May 2, 2014, Attijariwafa Bank proposed opening a line of credit in United Coals' favor in order to facilitate payment to Emerald.

71.     In reasonable reliance on Attijariwafa Bank's proposal to open a line of credit in United Coals' favor, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

72.     Attijariwafa Bank never opened the proposed line of credit.

**AEC's Demurrage Arbitration**

73.     On May 6, 2014, AEC commenced arbitration for damages arising from United

Coals' breach of the Charter Party, alleging demurrage due and owing in the amount of

$1,747,395.76 plus fees and costs.

**The Morocco Exchange Office Permits Attijariwafa**
**Bank to Execute the Funds-Transfer Order**

74.     Upon information and belief, the Morocco Exchange Office (Office des Changes)

is the department within the Morocco Ministry of Finance responsible for supervising foreign

exchange transactions.

75.     On or about April 23, 2014, at Attijariwafa Bank's request, Ricardo G. Leon,

United Coals' agent, met with officials at the Morocco Exchange Office to determine whether it

would impose any impediments to Attijariwafa Bank's execution of the Funds-Transfer Order.

76.     At the April 23, 2014, meeting, the Morocco Exchange Office officials told

Ricardo G. Leon that there were no foreign exchange impediments to Attijariwafa Bank's

execution of the Funds-Transfer Order.

77.     On May 7, 2014, Attijariwafa Bank asked the Morocco Exchange Office for

permission to settle a payment of $2,496,000 in favor of Emerald as soon as LC # 1080 was

realized.

78.     On May 9, 2014, the Morocco Exchange Office granted Attijariwafa Bank's

request.

79.     In reasonable reliance on Attijariwafa Bank's request to the Morocco Exchange

Office and the resulting grant of permission, United Coals continued its plans to perform both

ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore

continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

**Attijariwafa Bank Promises to Issue a Letter of Credit**

80.     On May 13, 2014, Attijariwafa Bank informed United Coals that Attijariwafa Bank was "preparing the letter of credit for your supplier [Emerald]" in the amount of $2,496,000, and that the letter of credit "should be issued within 48 h[ours] maximum."

81.     In reasonable reliance on Attijariwafa Bank's promise to issue a letter of credit for Emerald within forty-eight hours, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

82.     Attijariwafa Bank did not issue the promised letter of credit on May 15, 2014, or at any time thereafter.

**Attijariwafa Bank Promises another Bank Guaranty**

83.     As of May 15, 2014, AEC remained willing to load the coal cargo aboard the *Mardinik* in New Orleans and resolve all outstanding issues with United Coals if Attijariwafa Bank delivered a letter of credit acceptable to Emerald by the following morning.

84.     On May 15, 2014, Attijariwafa Bank sent United Coals a specimen Attijariwafa Bank guaranty addressed to Comerica Bank, Emerald's Detroit, Michigan, bank ("**Specimen Guaranty**").

85.     The Specimen Guaranty announced the issuance of Attijariwafa Bank's guaranty letter in favor of Emerald for the account of United Bank in the amount of $2,496,000 and

- 13 -

guaranteed Attijariwafa Bank's payment of that amount "five days after all the required documents are received ? checked and verified." [so in original].

86.     On May 16, 2014, Attijariwafa Bank advised United Coals that the bank guaranty was "under confirmation process," and that Attijariwafa Bank believed it could give United Coals "an answer" by May 19, 2014.

87.     In reasonable reliance on Attijariwafa Bank's promise to issue its guaranty in Emerald's favor, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

88.     Attijariwafa Bank did not issue the promised guaranty on May 19, 2014, or at any time thereafter.

**Attijariwafa Bank Again Promises to Issue a Letter of Credit**

89.     On May 20, 2014, Attijariwafa Bank advised United Coals that Attijariwafa Bank "had got approuval [*sic*] to issue the LC you asked for," and that the bank was "[w]aiting for the confirmation."

90.     In reasonable reliance on Attijariwafa Bank's statements of approval and imminent confirmation of a letter of credit in Emerald's favor, United Coals continued its plans to perform both ONEE Contracts, did not cancel the Charter Party or release the *Mardinik* and therefore continued to incur demurrage under the Charter Party, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

91.     Attijariwafa Bank never issued the promised letter of credit.

92.    On or about May 20, 2014, AEC gave notice to United Coals that AEC was terminating the Charter Party because of United Coals' failure to load the cargo aboard the *Mardinik.*

## Attijariwafa Bank Promises a Back-to-Back Letter of Credit

93.    On May 21, 2014, at Attijariwafa Bank's initiative, United Coals signed an Attijariwafa Bank form requesting Attijariwafa Bank to open an irrevocable back-to-back documentary credit ("**Back-to-Back LC**").

94.    The Back-to-Back LC was to be for $2,496,000.00 drawn on United Coals' 8033 Account in favor of Emerald as beneficiary, was to expire July 10, 2014, was to specify May 30, 2014, for the latest date of shipment, and was otherwise to be on the same terms and conditions as LC # 1080.

95.    In reasonable reliance on Attijariwafa Bank's promised Back-to-Back LC, United Coals continued its plans to perform both ONEE Contracts, attempted to induce AEC not to terminate the Charter Party and to keep the *Mardinik* available for loading in New Orleans, and induced Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

96.    Attijariwafa Bank never issued the promised Back-to-Back LC.

## BCP Amends LC # 1080

97.    On May 21, 2014, Attijariwafa Bank advised ONEE that the latest date for shipment specified on LC # 1080 had expired as of April 30, 2014, and requested ONEE to instruct BCP to amend the latest date of shipment specified on LC # 1080.

98.    On May 23, 2014, BCP amended the latest date for shipment specified on LC # 1080 from April 30, 2014, to May 30, 2014.

**Conditions as of May 23, 2014**

99.     As of May 23, 2014, Emerald remained willing to furnish steam coal for United Coals' first cargo delivery under ONEE Contract No. 415.

100.    As inducement to load the first cargo, Emerald would have accepted Attijariwafa Bank's guaranty, or letter of credit, or Back-to-Back LC.

101.    Had Attijariwafa Bank issued its guaranty, or letter of credit, or Back-to-Back LC at or before May 23, 2014, as promised, United Coals would have: (a) signed a written coal purchase agreement with Emerald and provided Emerald with an acceptable stand-by letter of credit; (b) loaded the first cargo of steam coal aboard the *Mardinik* or a substitute vessel prior to May 30, 2014; (c) delivered the first cargo of steam coal to Casablanca pursuant to ONEE Contract No. 415, (d) made the necessary presentation of documents to obtain the proceeds of LC # 1080; (e) obtained the proceeds of LC # 1080; and (f) made subsequent cargo deliveries and fully performed both ONEE Contracts.

**AEC's Arbitration Award**

102.    On June 23, 2014, the United States District Court for the Southern District of New York granted AEC's petition to compel arbitration against United Coals.

103.    On September 10, 2014, the arbitrators awarded damages in favor of AEC and against United Coals for breach of the Charter Party in the amount of $2,125,521.00.

## COUNT I
### (Breach of Contract)

104.    United Coals repeats and realleges the above allegations as if fully set forth here.

105.    At various times between April 14 and May 21, 2014, as alleged, Attijariwafa Bank offered to issue its guaranty, letter of credit, and Back-to-Back LC.

106.    United Coals accepted each of Attijariwafa Bank's offers.

107.   Attijariwafa Bank's offers and United Coals' acceptances gave rise to valid agreements on the part of Attijariwafa Bank to: (a) issue the bank's guaranty; (b) issue the bank's letter of credit, and (c) issue the bank's Back-to-Back LC ("**Agreements**").

108.   The Agreements were supported by valuable consideration, including, but not limited to: (a) United Coals' opening of the 8033 Account; (b) United Coals' compliance with Attijariwafa Bank's request to make the Funds-Transfer Order; (c) United Coals' compliance with Attijariwafa Bank's request to clear the execution of the Funds-Transfer Order with the Morocco Exchange Office; and (d) United Coals' compliance with Attijariwafa Bank's request to apply for the Back-to-Back LC.

109.   Attijariwafa Bank materially breached the Agreements by failing to issue any of the promised instruments.

110.   As a direct result of Attijariwafa Bank's material breaches of the Agreements, United Coals was prevented from: (a) entering into the coal purchase agreement with Emerald, (b) inducing Emerald to load the first coal cargo aboard the *Mardinik*, (c) delivering the first cargo of steam coal to ONEE under ONEE Contract No. 415; (d) presenting the documents necessary to realize the proceeds of LC # 1080; (e) realizing the proceeds of LC # 1080; and (f) performing and realizing the value of both ONEE Contracts.

111.   As a direct result of Attijariwafa's material breaches of the Agreements, United Coals incurred the AEC arbitration award.

112.   All the foregoing consequences of Attijariwafa Bank's material breaches of the Agreements were reasonably foreseeable by Attijariwafa Bank when the Agreements were formed.

113.   As a direct result of Attijariwafa Bank's material breaches of the Agreements, United Coals has been damaged in an amount to be proved at trial, but no less than $7,000,000.

## COUNT II
### (Alternatively, Promissory Estoppel)

114.   United Coals repeats and realleges the above allegations as if fully set forth here.

115.   At various times between April 14 and May 21, 2014, as alleged, Attijariwafa Bank made promises to United Coals to issue the bank's guaranty, to establish a line of credit in United Coals' favor, to issue the bank's letter of credit, and to issue the bank's Back-to-Back LC ("**Promises**").

116.   Attijariwafa Bank should reasonably have expected the Promises to induce action or forbearance on the part of United Coals.

117.   The Promises in fact induced United Coals to:  (a) continue its plans to perform both ONEE Contracts; (b) not cancel the Charter Party or release the *Mardinik* and therefore continue to incur demurrage under the Charter Party, and (c) induce Emerald to remain willing to furnish the first cargo of steam coal under ONEE Contract No. 415.

118.   United Coals' action and forbearance in reliance on the Promises were reasonable.

119.   United Coals' action and forbearance in reliance on the Promises were foreseeable to Attijariwafa Bank.

120.   Attijariwafa Bank's failure to perform the Promises directly resulted in a severe injustice to United Coals.

121.   In the circumstances, the injustice to United Coals can be avoided only by granting a just remedy.

122.   A just remedy is to require Attijariwafa Bank to make United Coals whole for all losses sustained as a result of Attijariwafa Bank's failure to perform the Promises.

123.   No other remedy is available or adequate to United Coals.

WHEREFORE United Coals demands judgment against Attijariwafa Bank:

(A)   On Count I, awarding actual and consequential damages in amounts to be proved at trial, but no less than $7,000,000;

(B)   On alternative Count II, awarding such remedy as equity and justice require, *to wit*, making United Coals whole for all losses sustained as a result of Attijariwafa Bank's failure to perform the Promises;

(C)   Awarding pre-judgment and post-judgment interest as allowed by law;

(D)   Awarding the costs of the action; and

(E)   Awarding such other and further relief as to the Court seems just and reasonable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b), W. Va. R. Civ. P., plaintiff United Coals, Inc. hereby demands trial by jury of all issues triable of right by jury.

Respectfully submitted the 5th day of November, 2018.

Plaintiff, **UNITED COALS, INC.,**
**By Counsel:**

James A. Varner, Sr. (WV State Bar #3853)
Debra Tedeschi Varner (WV State Bar #6501)

Empire Building – 400 West Main Street
P. O. Drawer 2040
Clarksburg, WV 26302-2040
Telephone: (304) 626-1100
Facsimile: (304) 623-3035

McNeer, Highland, McMunn and Varner, L.C.
Of Counsel

في دائرة محكمة مقاطعة هوريسون غرب فرجينيا

يونايتد كولز إنك

المدعي،

الدعوى المدنية رقم C-18-   [نص بخط اليد:]
272-3

ضد

التجاري وفا بنك
2 بوليفارد مولاي يوسف
الدار البيضاء 20 000
المغرب،

المُدعى عليه

## شكوى وطلب للمحاكمة أمام هيئة المحلفين

تدعي شركة يونايتد كولز إنك **("يونايتد كولز")**، عبر محاميها، في شكواها المقدمة ضد التجاري وفا بنك (**"التجاري وفا

بنك"**)، ما يلي:

## الأطراف

1. المدعي هو يونايتد كولز، وهو عبارة عن شركة مُنظمة وقائمة بموجب قوانين غرب فرجينيا يقع مقر أعمالها

الرئيسي في كلاركسبيرج، غرب فرجينيا.

2. في 10 أكتوبر 2013، عينت يونايتد كولز ريكاردو جي ليون، وهو مقيم بالمغرب، ليكون الممثل الوحيد لها

في المغرب لأغراض إبرام عقود شراء الفحم من الحكومة المغربية وللقيام بأي أنشطة تجارية أخرى في المغرب تستفيد منها

يونايتد كولز.

3. وبناء على المعلومات وإلى حد علمنا، المُدعى عليه التجاري وفا بنك هو عبارة عن مؤسسة مصرفية غير

مقيمة مُنظمة وقائمة بموجب قوانين مملكة المغرب يقع مقرها الرئيسي في الدار البيضاء بالمغرب.

<u>**الإختصاص القضائي والمكان**</u>

4.‏      تملك هذه المحكمة الإختصاص القضائي لنظر الدعوى الماثلة طبقًا للقانون بموجب قانون غرب فرجينيا،

القسم 2-2-51(ب) لأن المبلغ محل النزاع في الدعوى، غير شامل الفائدة، يزيد عن 7,500.00 دولار، كما تملك الإختصاص

القضائي طبقًا لقواعد العدالة بموجب قانون غرب فرجينيا، القسم 2-2-51(د).

5.‏      كما أن مكان نظر القضية مناسب في مقاطعة هاريسون طبقًا لقانون غرب فرجينيا، القسم 1-1-56(أ)(1)

لأن مطالبات المدعي قد نشأت في هذه المقاطعة.

<u>**الوقائع المشتركة في جميع الفقرات الإتهامية**</u>

<u>**عقود توريد الفحم المبرمة مع قطاع الكهرباء**</u>

6.‏      بتاريخ 27 نوفمبر 2013 تقريبًا، قام قطاع الكهرباء بالمكتب الوطني للكهرباء والماء الصالح للشرب

(**"قطاع الكهرباء"**) بترسية العقد رقم F5 415 94 SC (**"عقد قطاع الكهرباء رقم 415"**) على يونايتد كولز؛ وبتاريخ 18

ديسمبر 2013 تقريبًا، قام قطاع الكهرباء بترسية العقد رقم F5 425 94 SC (**"عقد قطاع الكهرباء رقم 425"**) على

يونايتد كولز (ويُشار إليهما معًا باسم **"عقود قطاع الكهرباء"**).

7.‏      طبقًا لعقد قطاع الكهرباء رقم 415، وافقت يونايتد كولز على تسليم 192,000 طن متري (± 10%)

من الفحم البخاري المُستخرج في الولايات المتحدة إلى ميناء الدار البيضاء على ست شحنات.

8.‏      وطبقًا لعقد قطاع الكهرباء رقم 425، وافقت يونايتد كولز على تسليم 96,000 طن متري (± 10%) من

الفحم البخاري المُستخرج في الولايات المتحدة إلى ميناء الدار البيضاء على ثلاث شحنات.

9.‏      وطبقًا لعقود قطاع الكهرباء، وافق قطاع الكهرباء على أن يدفع ليونايتد كولز مبلغ 93.00 دولار طن

متري (شاملًا رسوم الشحن)، ومن ثم أصبحت قيمة عقود قطاع الكهرباء المجمعة ليونايتد كولز 26,784,000

دولار.

10.‏     وطبقًا لعقود قطاع الكهرباء، وافق قطاع الكهرباء على أن يدفع إلى يونايتد كولز بموجب اعتماد مستندي

غير قابل للإلغاء تفتحه قطاع الكهرباء في بنك أساسي لصالح يونايتد كولز على أن يكون كل اعتماد مستندي غير قابل للإلغاء

مستحق الدفع عند تقديم يونايتد كولز مستندات مُعينة، وتشمل هذه المستندات من بين مستندات أخرى، الفواتير التجارية

وبوليصات الشحن وشهادات المنشأ وشهادات التحليل.

11.    وبتاريخ 30 ديسمبر 2013، توقعت يونايتد كولز أن يقدم قطاع الكهرباء طلبًا للتجاري وفا بنك، وهو بنك مغربي، من أجل إصدار خطابات اعتماد من أجل دفع قيمة شحنات الفحم بموجب عقود قطاع الكهرباء.

12.    وبتاريخ 30 ديسمبر 2013، وبناء على توصية قطاع الكهرباء، أبلغت يونايتد كولز التجاري وفا بنك بأن يونايتد كولز قد حصلت على عقدي قطاع الكهرباء وأعربت عن رغبتها في فتح حساب لدى البنك، وذكرت بأن "الغرض من هذا الحساب سيكون إدارة خطاب الاعتماد الخاص بنا لدى قطاع الكهرباء" وأن "يجب أن يكون بإمكان هذا الحساب إرسال واستلام الحوالات البرقية الدولية من وإلى الولايات المتحدة الأمريكية" وحدد ريكاردو جي ليون باعتباره الممثل المفوض ليونايتد كولز، بما في ذلك لأغراض فتح الحساب المطلوب لدى التجاري وفا بنك والتعامل من خلاله.

13.    ولكن لأسباب لا تعلمها يونايتد كولز، قرر قطاع الكهرباء لاحقًا أن تطلب من بنك مغربي آخر خطابات الاعتماد اللازمة.

**مشارطة إيجار أيه إي سي**

14.    بتاريخ 24 يناير 2014 تقريبًا، أبرمت يونايتد كولز مشارطة إيجار للنقل البحري ("**مشارطة الإيجار**") مع شركة أجريكلتشر أند إينرجي كاريرز ليمتد. (**"أيه إي سي"**)، وهي شركة وساطة قائمة في البهاماز تتصرف كمالك سفينة (يُحدد اسمها لاحقًا) من أجل نقل 31,500 طن متري من الفحم من كيندر مورجان إنترناشيونال مارين ترمينالز، ميرتير جروف (بالقرب من نيو أورليانز)، لويزيانا إلى الدار البيضاء بالمغرب وقد كانت هذه هي الشحنة الأولى من الفحم البخاري طبقًا لعقد قطاع الكهرباء رقم 415.

15.    وقد أوجبت مشارطة الإيجار على يونايتد كولز أن تدفع لأيه إي سي غرامة تأخير بمعدل 22,000 دولار في اليوم.

16.    وبتاريخ 6 فبراير 2014، عينت أيه إي سي أم/في ماردينيك (*"ماردينيك"*) من أجل تنفيذ مشارطة الإيجار.

17.    وبتاريخ 14 فبراير 2014، قدمت ماردينيك إخطار بجاهزيتها في مارتيل جروف، لويزيانا، لتحميل الشحنة طبقًا لمشارطة الإيجار.

18.    بدأت ماردينيك في تحمل غرامات التأخير في 16 فبراير 2014 تقريبًا.

- 3 -

19. وقد حرصت يونايتد كولز على إبلاغ تجاري وفا بنك في جميع الأوقات بوضع مشارطة الإيجار *وماردينيك*.

**إمير لاند إنترناشيونال كروبوريشن**

20. مؤسسة إمير لاند إنترناشيونال كروبوريشن ("إميرلاند") هي شركة لتوريد الفحم قائمة في كنتاكي.

21. وتقوم إمير لاند ويونايتد كولز في الغالب بشراء وبيع الفحم لبعضهم البعض من أجل تسهيل تنفيذ كل منهما لعقود توريد الفحم.

22. وفي بداية عام 2014، استحوذت إمير لاند على كمية من الفحم البخاري الموجود بالقرب من نيو أورليانز بولاية لويزيانا، وهي كمية مناسبة لاستخدام يونايتد كولز في توفير الشحنة الأولى من الفحم البخاري لتسليمها طبقًا لعقد قطاع الكهرباء رقم 415 ("فحم لويزيانا الخاصة بإميرلاند").

23. وفي 14 مارس 2014، أكدت إمير لاند ليونايتد كولز أنها ستقوم بتحميل*ماردينيك* في نيو أورليانز عندما تقوم يونايتد كولز بتحرير عقد شراء الفحم وعند الحصول على خطاب اعتماد احتياطي مقبول يغطي المدفوعات الخاصة بالفحم.

24. وقد ظلت إمير لاند طوال الوقت اعتبارًا من تاريخ تأكيد إمير لاند بتاريخ 14 مارس 2014 وحتى قطع العلاقات بين يونايتد كولز والتجاري وفا بنك في أواخر شهر مايو 2014 (على النحو المُوضح بمزيد من التفاصيل أدناه)، جاهزة لأن تبيع إلى يونايتد كولز 32,000 طن متري من فحم لويزيانا الخاصة بإمير لاند لتستخدمه يونايتد كولز في توفير الشحنة الأولى من الفحم البخاري إلى قطاع الكهرباء طبقًا لعقد قطاع الكهرباء رقم 415.

**خطاب الاعتماد رقم 316**

25. بتاريخ 5 فبراير 2014، ومن أجل سداد قيمة الشحنة الأولى من الفحم بموجب عقد قطاع الكهرباء رقم 415، قدم قطاع الكهرباء للبنك الشعبي المركزي "البنك الشعبي"، وهو بنك مغربي، للحصول على اعتماد مستندي مُؤكد غير قابل للإلغاء ساري حتى 31 يوليو 2014 بقيمة 2,976,000 دولار يُحدد يونايتد كولز بصفتها المستفيد.

26. وبتاريخ 6 فبراير 2014، أصدر البنك الشعبي الاعتماد المستندي غير القابل للإلغاء الخاص به رقم 80050140316 بقيمة 2,976,000.00 دولار، والذي ينتهي بتاريخ 31 يوليو 2014، ويحدد يونايتد كولز بصفتها المستفيد "خطاب الاعتماد رقم 316").

27. حدد خطاب الاعتماد رقم 316 البنك المغربي للتجارة الخارجية ("البنك المغربي") باعتباره البنك "المتاح

- 4 -

لدى ... بواسطة ....." (الحقل 41 أأ) وباعتباره البنك "مبلغ الاعتماد" (الحقل 57أأ).

28.   وقد كان خطاب الاعتماد 316 مستحق الدفع عند تقديم يونايتد كولز إلى البنك المغربي مستندات مُعينة (الحقل 46أأ)، والتي تشمل، من بين مستندات أخرى، الفواتير التجارية وبوليصات الشحن وشهادات المنشأ وشهادات التحليل.

29.   ولم يحدد خطاب الاعتماد رقم 316 تاريخ أخير للشحنة، ولكنه ذكر أن الشحنة كان مسموح بها خلال مدة صلاحية الاعتماد المستندي (الحقل 44ددد).

30.   وفي نفس اليوم (6 فبراير 2014)، أبلغ قطاع الكهرباء يونايتد كولز بإصدار البنك الشعبي لخطاب الاعتماد رقم 316.

<u>خطاب الاعتماد رقم 316 - التعديل رقم 1</u>

31.    بتاريخ 26 فبراير 2014، طلب قطاع الكهرباء من البنك الشعبي تعديل خطاب الاعتماد رقم 316 لجعله غير قابل للإلغاء وقابل للنقل.

32.    وبناء على المعلومات المتاحة وإلى حد علمنا، طلب قطاع الكهرباء جعل خطاب الاعتماد رقم 316 قابلاً للنقل بحيث يكون بإمكان يونايتد كولز استخدام خطاب الاعتماد رقم 316 وعائداتها في دفع رسوم إميرلاند الخاصة بالشحنة الأولى من الفحم بموجب عقد قطاع الكهرباء رقم 415.

33.    وبتاريخ 27 فبراير 2014، قام البنك الشعبي بتعديل خطاب الاعتماد رقم 316 لجعله غير قابل للإلغاء وقابل للنقل وأخطر البنك المغربي بالتعديل في نفس اليوم.

<u>حساب التجاري وفا بنك رقم 8033</u>

34.    بتاريخ 28 مارس 2014 تقريبًا، قامت يونايتد كولز بفتح حساب دولاري برقم R 0541 000428033 لدى التجاري وفا بنك، فرع الدار البيضاء بالمغرب  (**"الحساب رقم 8033"**) وذلك لغرض استلام خطاب الاعتماد رقم 316 وعائداتها وتحويل نسبة من العائدات إلى إميرلاند لأداء المدفوعات المستحقة عن الدفعة الأولى من الفحم بموجب عقد قطاع الكهرباء رقم 415.

<u>خطاب الاعتماد رقم 316 - التعديل رقم 2</u>

35.    بتاريخ 2 أبريل 2014 ، قام البنك الشعبي مُجددًا بتعديل خطاب الاعتماد رقم 316, ولكن هذه المرة لتغيير البنك "مبلغ الاعتماد" (الحقل 57أأ) منت البنك المغربي إلى التجاري وفا بنك.

36.    لقد كان تغيير البنك الشعبي مرتبط ارتباطًا صريحًا بالحساب رقم 8033 الخاص بيونايتد كولز لدى التجاري وفا بنك.

37.    وبناء على التعليمات المتاحة وإلى حد علمنا، كان السبب وراء هذا التعديل أن البنك الشعبي وقطاع الكهرباء قد علما بأن البنك المغربي رفض التبليغ بصفته البنك المبلغ للاعتماد فيما يتعلق بخطاب الاعتماد رقم 316.

- 6 -

<u>أمر تحويل أموال يونايتد كولز</u>

38.   وفي نفس اليوم (2 أبريل 2014)، وبناءً على طلب التجاري وفا بنك، قدمت يونايتد كولز طلب إلى التجاري وفا بنك تطلب فيه من البنك تحويل مبلغ قدره 2,496,000 دولار من الحساب رقم 8033 الخاصة بيونايتد كولز إلى حساب إميرلاند في كوميركا بنك في ديترويت بميتشغين ("**أمر تحويل الأموال**").

39.   اقترح التجاري وفا بنك أمر تحويل الأموال كوسيلة لاستخدام يونايتد كولز لعائدات خطاب الاعتماد رقم 316 في سداد المدفوعات الخاصة بإميرلاند المستحقة عن دفعة الفحم البخاري الأولى المقرر تسليمها بموجب عقد قطاع الكهرباء رقم 415.

40.   وبتاريخ 4 أبريل 2014, أبلغ التجاري وفا بنك إميرلاند بأنه بمجرد صرف الأموال بموجب خطاب الاعتماد رقم 316 إلى الحساب رقم 8033 الخاص بيونايتد كولز، فسوف تحصل إميرلاند على مبلغ قدره 2,496,000 دولار وفقًا لأمر تحويل الأموال.

41.   وبتاريخ 7 أبريل 2014، وبناء على إخطار التجاري وفا بنك بتاريخ 4 أبريل 2014، أكدت إميرلاند ليونايتد كولز أن إميرلاند سوف تقوم بتحميل شحنة الفحم على متن سفينة *ماردينيك* عند تحرير يونايتد كولز لعقد لشراء الفحم واستلام خطاب اعتماد احتياطي مقبول يغطي قيمة المدفوعات الخاصة بالفحم.

<u>إلغاء البنك الشعبي لخطاب الاعتماد رقم 316</u>

42.   لأسباب لا تعرفها يونايتد كولز، وفي وقت غير معلوم في الفترة من 27 فبراير و10 أبريل 2014، قام البنك الشعبي بإلغاء خطاب الاعتماد رقم 316.

<u>إصدار البنك الشعبي لخطاب الاعتماد رقم 1080</u>

43.   بتاريخ 10 أبريل 2014، ومن أجل سداد قيمة الشحنة الأولى من الفحم بموجب عقد قطاع الكهرباء رقم 415، وبقصد إلغاء واستبدال خطاب الاعتماد رقم 316 والتعديلين الذين تم إدخالهما عليه، طلب قطاع الكهرباء من البنك الشعبي إصدار اعتماد مستندي مؤكد غير قابل للإلغاء بديل يسري حتى 31 يوليو 2014 بمبلغ 2,976,000 دولار يحدد يونايتد كولز بصفتها المستفيد.

٤٤. وبتاريخ 10 أبريل 2014، أصدر البنك الشعبي الاعتماد المستندي غير القابل للإلغاء الخاص به رقم 80050141080 بقيمة 2,976,000.00 دولار، والذي ينتهي بتاريخ 31 يوليو 2014، ويحدد يونايتد كولز بصفته المستفيد (**"خطاب الاعتماد رقم 1080"**).

٤٥. حدد خطاب الاعتماد رقم 1080 التجاري وفا بنك باعتباره البنك "المتاح لدى ..... بواسطة...." (الحقل 41أأ) وباعتباره البنك "مبلغ الاعتماد" (الحقل 57أأ).

٤٦. وقد كان تعيين خطاب الاعتماد رقم 1080 للتجاري وفا بنك باعتباره البنك "مبلغ الاعتماد" مرتبطًا بالحساب رقم 8033 الخاص بيونايتد كولز لدى التجاري وفا بنك.

٤٧. وقد حدد خطاب الاعتماد رقم 1080 يوم 30 أبريل 2014 باعتباره آخر تاريخ للشحنة (الحقل 44ججج).

٤٨. وقد كان خطاب الاعتماد 1080 مستحق الدفع عند تقديم يونايتد كولز إلى التجاري وفا بنك مستندات مُعينة (الحقل 46أأ)، والتي تشمل، من بين مستندات أخرى، الفواتير التجارية وبوليصات الشحن وشهادات المنشأ وشهادات التحليل.

٤٩. وبتاريخ 10 أبريل 2014، أبلغ البنك الشعبي التجاري وفا بنك بإصدار خطاب الاعتماد رقم 1080.

٥٠. وفي 10 أبريل 2014, أخطر التجاري وفا بنك يونايتد كولز بإصدار البنك الشعبي لخطاب الاعتماد رقم 1080.

٥١. ووفقًا للمعلومات المتاحة وإلى حد علمنا، عين التجاري وفا بنك الرقم المرجعي الخاص به ELC00007397 لخطاب الاعتماد رقم 1080.

٥٢. وبتاريخ 10 أبريل 2014، أكدت أيه إي سي أن سفينة *مارديناك* لا تزال متاحة للتحميل في نيو أورليانز وأنها تنتظر إخطار من يونايتد كولز لبدء التحميل.

<u>**رفض التجاري وفا بنك تبليغ خطاب الاعتماد رقم 1080 إلى يونايتد كولز**</u>

٥٣. وفي اليوم التالي (11 أبريل 2014)، أبلغ التجاري وفا بنك البنك الشعبي بأن التجاري وفا بنك لا يمكنه تبليغ خطاب الاعتماد رقم 1080 إلى المستفيد (يونايتد كولز) لأن المستفيد لم يكن مقيمًا بالدولة، واعتبر التجاري وفا بنك رسالة البنك الشعبي المؤرخة 10 أبريل 2014 (التي يقدم فيها إخطار بإصدار البنك الشعبي لخطاب الاعتماد رقم 1080) ملغيًا وباطلاً، وكان التجاري وفا بنك يهم بإغلاق ملفه.

- 8 -

54.     لم تعرف يونايتد كولز بذلك حتى 13 أبريل 2014 برفض التجاري وفا بنك المضي قدماً في الإجراءات الخاصة بخطاب الاعتماد رقم 1080.

**وعود التجاري وفا بنك بإصدار ضمان**

55.     على الرغم من إعلان التجاري وفا بنك رفضه المضي قدماً في إجراءات خطاب الاعتماد رقم 1080، إلا أنه أبلغ يونايتد كولز بعد ثلاثة أيام (14 أبريل 2014) بأن البنك كان يعمل على إصدار خطاب ضمان طلبته يونايتد كولز لصالح إميرلاند، وقال "يمكننا تقديمه إليكم غداً."

56.     وقد جعلت رسالة التجاري وفا بنك المؤرخة 14 أبريل 2014 يونايتد كولز تعتقد بصورة معقولة أنه على الرغم من رسالة البنك المؤرخة 11 أبريل 2014، إلا أن البنك: (أ) لا يزال يرغب في المضي قدماً في إجراءات خطاب الاعتماد رقم 1080؛ و(ب) يرغب في تسهيل شحن الشحنة الأولى بموجب عقد قطاع الكهرباء رقم 415 عن طريق إصدار خطاب يضمن سداد يونايتد كولز دفع المبالغ المستحقة إلى إميرلاند؛ و(ج) كان يخطط لتقديم ضمان في اليوم التالي.

57.     وبالاعتماد بصورة معقولة على رسالة التجاري وفا بنك، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغي مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

58.     لم يقدم التجاري وفا بنك خطاب الضمان الذي وعد به بتاريخ 15 أبريل 2014، أو في أي وقت بعد ذلك.

<u>أحداث 25 أبريل 2014</u>

59.    بتاريخ 25 أبريل 2014، أصدرت إمير لاند فاتورتها رقم EE8569 إلى يونايتد كولز بمبلغ 2,496,000

دولار مقابل 32,000 طن متري من الفحم البخاري والتي تمثل الشحنة الأولى بموجب عقد قطاع الكهرباء رقم 415.

60.    وفي نفس اليوم (25 أبريل 2014)، ومع إعادة استخدام أمر تحويل الأموال المُوقع بالفعل من يونايتد كولز،

قبل التجاري وفا بنك أمر يونايتد كولز بتحويل مبلغ 2,496,000 دولار من الحساب رقم 8033 الخاص بيونايتد كولز إلى

حساب إمير لاند في كوميركا بنك في ديترويت بميتشغين.

61.    وفي نفس اليوم (25 أبريل 2014)، ألغى التجاري وفا بنك رسالته المؤرخة 11 أبريل 2014 المُرسلة إلى

البنك الشعبي، والتي يوافق بموجبها على المضي قدماً في إجراءات خطاب الاعتماد رقم 1080.

62.    وفي اليوم ذاته (25 أبريل 2014)، أكد التجاري وفا بنك ليونايتد كولز موافقة البنك على المضي قدمًا في

خطاب الاعتماد رقم 1080.

<u>تبليغ التجاري وفا بنك خطاب الاعتماد رقم 1080 إلى يونايتد كولز</u>

63.    بتاريخ 28 أبريل 2014، قام التجاري وفا بنك بتبليغ خطاب الاعتماد رقم 1080 إلى يونايتد كولز بصفتها

المستفيد.

64.    وفي 28 أبريل 2014 أيضًا، علم التجاري وفا بنك أن يونايتد كولز لم يعد لديها سوى يومين بموجب خطاب

الاعتماد رقم 1080 لشحن الشحنة الأولى من الفحم بموجب عقد قطاع الكهرباء رقم 415.

<u>إعلان التجاري وفا بنك عن شروط</u>
<u>تنفيذ أمر تحويل الأموال</u>

65.    وفي نفس اليوم (28 أبريل 2014)، أرسل التجاري وفا بنك إلى يونايتد كولز يصدق فيه على أن التجاري وفا

بنك قد تلقى أمر تحويل الأموال الخاصة بيونايتد كولز  (**"خطاب التصديق"**).

66.    خطاب التصديق الخاص بالشروط الثلاثة التي يتم الإعلان عنها لأول مرة لتنفيذ أمر تحويل الأموال: سيتم

تنفيذ الأمر في أقرب وقت ممكن بعد الاعتراف بخطاب الاعتماد رقم 1080 وتسويته، (ب) وبعد التحقق من أن مستندات المعاملة

مطابقة للشروط واللوائح السارية، و(ج) بشرط أن يكون الرصيد المتبقي في الحساب رقم 8033 الخاص بيونايتد كولز كافي.

67.    وبتاريخ 28 أبريل 2014، أرسل التجاري وفا بنك نسخ من أمر تحويل الأموال وخطاب التصديق إلى

إميرلاند وقام بدعوة إميرلاند من أجل الاتصال بالتجاري وفا بنك إذا كانت لديها أي أسئلة أو تحتاج إلى المزيد من المعلومات.

68. وبالاعتماد المعقول على: (أ) موافقة التجاري وفا بنك على المضي قدما في إجراءات خطاب الاعتماد رقم 1080، و(ب) تبليغ التجاري وفا بنك لخطاب الاعتماد رقم 1080، و(ج) إصدار التجاري وفا بنك لخطاب التصديق، و(د) إرسال التجاري وفا بنك لأمر تحويل الأموال وخطاب التصديق إلى إميرلاند، تابعت يونايتد كولز خططها من أجل تنفيذ عقود قطاع الكهرباء ولم تلغ مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأولى من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

69. وفي 30 أبريل، 2014، انقضى أخر تاريخ للشحن المحدد في خطاب الاعتماد رقم 1080.

**اقتراح التجاري وفا بنك خط اعتماد**

70. بتاريخ 2 مايو 2014، اقترح التجاري وفا بنك فتح خط اعتماد لصالح يونايتد كولز من أجل تسهيل عملية الدفع إلى إميرلاند.

71. وبالاعتماد بصورة معقولة على اقتراح التجاري وفا بنك بفتح خط اعتماد لصالح يونايتد كولز، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغي مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأولى من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

72. لم يقم التجاري وفا بنك بفتح أي خط اعتماد مقترح على الإطلاق.

- 11 -

**التحكيم الخاص بغرامة تأخير أيه سي إي**

73.    بتاريخ 6 مايو 2014، بدأت أيه سي إي إجراءات تحكيم بشأن التعويضات الناشئة عن مخالفة يونايتد كولز

لمشارطة الإيجار، زاعمة أن قيمة غرامة التأخير هي 1,747,395.76 دولار بالإضافة إلى الرسوم والتكاليف.

**تصريح مكتب الصرف بالمغرب للتجاري وفا بنك**
**لتنفيذ أمر تحويل الأموال**

74.    بناء على المعلومات المتاحة وإلى حد معرفتنا، مكتب الصرف بالمغرب هو عبارة عن إدارة داخل وزارة

المالية المغربية وهو المسؤول عن الإشراف على معاملات الصرف الأجنبي.

75.    في 23 أبريل 2014 تقريبًا، وبناءً على طلب التجاري وفا بنك، التقى ريكاردو جي ليون، وكيل يونايتد كولز،

بمسؤولين بمكتب الصرف بالمغرب من أجل تحديد ما إذا كان المكتب سيفرض أي عوائق على تنفيذ التجاري وفا بنك لأمر تحويل

الأموال أم لا.

76.    وفي اجتماع 23 أبريل 2014، أخبر مسؤولو مكتب الصرف بالمغرب ريكاردو جي ليون بأنه لا توجد أي

عوائق تتعلق بالصرف الأجنبي فيما يتعلق بتنفيذ التجاري وفا بنك لأمر تحويل الأموال.

77.    وبتاريخ 7 مايو 2014، طلب التجاري وفا بنك من مكتب الصرف بالمغرب أن يمنحه تصريح من أجل تسوية

دفعة مالية بقيمة 2,496,000 دولار لصالح إميرلاند في أقرب وقت ممكن من تحقق خطاب الاعتماد رقم 1080.

78.    وفي 9 مايو 2014, منح مكتب الصرف التجاري وفا بنك ما طلبته.

79.    وبالاعتماد بصورة معقولة على طلب التجاري وفا بنك المقدم إلى مكتب الصرف ومنحه التصريح

المطلوب، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغي مشارطة الإيجار ولم تصرف

ماردينيك وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير

الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

**وعد التجاري وفا بنك بإصدار خطاب اعتماد**

80.    بتاريخ 13 مايو 2014، أبلغ التجاري وفا بنك يونايتد كولز أنن التجاري وفا بنك كان "يعد خطاب اعتماد

للمورد الخاص بكم [إميرلاند]" بمبلغ 2,496,000 دولار، وأن خطاب الاعتماد "يجب إصداره خلال 48 ساعة على الأكثر ."

81.    وبالاعتماد بصورة معقولة على الوعد المقدم من التجاري وفا بنك بإصدار خطاب اعتماد لصالح إميرلاند

- 12 -

خلال أربعة وعشرين ساعة، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغِ مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

82.    لم يصدر التجاري وفا بنك خطاب الاعتماد الذي وعد به بتاريخ 15 مايو 2014 أو في أي وقت بعد ذلك.

**وعود التجاري وفا بنك بإصدار ضمان بنكي آخر**

83.    في 15 مايو 2014، كانت أيه إي سي إي لا تزال ترغب في تحمل شحنة الفحم على متن سفينة *ماردينيك* في نيو أورليانز وحل جميع المسائل العالقة مع يونايتد كولز إذا قدم التجاري وفا بنك خطاب اعتماد مقبول لدى إميرلاند في صباح اليوم التالي.

84.    وفي 15 مايو 2014، أرسل التجاري وفا بنك إلى يونايتد كولز عينة من ضمان التجاري وفا بنك الموجه إلى بنك إميرلاند، كوميركا بنك في ديترويت بميتشغين (**"عينة الضمان"**).

85.    كانت عينة الضمان بمثابة إعلان بإصدار التجاري وفا بنك خطاب ضمان لصالح إميرلاند لحساب البنك المتحد بقيمة 2,496,000 دولار كما كان بمثابة ضمان بدفع التجاري وفا بنك ذلك المبلغ "بعد خمسة أيام من تاريخ استلام جميع المستندات المطلوبة؟ وفحصها والتحقق منها." [بنسخها الأصلية].

86.    وبتاريخ 16 مايو 2014، أبلغ التجاري وفا بنك يونايتد كولز بأن الضمان البنكي كان "قيد إجراءات التأكيد"، وأن التجاري وفا بنك اعتقد بأن بإمكانه أن يعطي ليونايتد كولز "ردًا" بحلول 19 مايو 2014.

87.    وبالاعتماد بصورة معقولة على وعد التجاري وفا بنك بإصدار ضمان لصالح إميرلاند، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغِ مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

88.    لم يصدر التجاري وفا بنك الضمان الذي وعد به بتاريخ 19 مايو 2014 أو في أي وقت بعد ذلك.

**وعد التجاري وفا بنك مُجددًا بإصدار خطاب اعتماد**

89.    بتاريخ 20 مايو 2014، أبلغ التجاري وفا بنك يونايتد كولز بأن التجاري وفا بنك "قد حصل على موافقة

- 13 -

لإصدار خطاب الاعتماد الذي طلبتموه" وأن البنك كان "ينتظر الحصول على تأكيد."

90.     وبالاعتماد بصورة معقولة على بيانات الموافقة والتأكيد الوشيك على إصدار خطاب اعتماد لصالح إميرلاند الصادرة عن التجاري وفا بنك، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، ولم تلغي مشارطة الإيجار ولم تصرف *ماردينيك* وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

91.     لم يصدر التجاري وفا بنك خطاب الاعتماد الذي وعد به.

92.     وبتاريخ 20 مايو 2014 تقريبًا، قدمت أيه إي سي إخطارًا إلى يونايتد كولز يفيد بأن أيه إي سي قد أنهت مشارطة الإيجار بسبب عدم تحميل يونايتد كولز الشحنة على متن سفينة *ماردينيك*

**وعد التجاري وفا بنك بإصدار خطاب اعتماد تعاقبي**

93.     بتاريخ 21 مايو 2014، وببادرة من التجاري وفا بنك، وقعت يونايتد كولز على نموذج للتجاري وفا بنك تطلب فيه من التجاري وفا بنك فتح اعتماد مستندي تعاقبي غير قابل للإلغاء (**"خطاب الاعتماد التعاقبي"**).

94.     كان من المقرر أن يكون خطاب الاعتماد التعاقبي بمبلغ 2,496,000.00 دولار وأن يكون مسحوبًا على الحساب رقم 8033 الخاصة بيونايتد كولز لصالح إميرلاند بصفتها المستفيد وكان من المقرر أن تنتهي صلاحيته بتاريخ 10 يوليو 2014 وأن يحدد 30 مايو 2014 كآخر تاريخ للشحن وأن يكون بنفس شروط وأحكام خطاب الاعتماد رقم 1080.

95.     وبالاعتماد بصورة معقولة على خطاب الاعتماد التعاقبي الذي وعد به التجاري وفا بنك، استمرت يونايتد كولز في وضع خططها لأداء عقدي قطاع الكهرباء، وحاولت حث أيه إي سي على عدم إنهاء مشارطة الإيجار لكي تبقى على توافر سفينة *ماردينيك* من أجل التحميل في نيو أورليانز، وحثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

96.     لم يصدر التجاري وفا بنك خطاب الاعتماد التعاقبي الذي وعدت به.

**تعديل البنك الشعبي لخطاب الاعتماد رقم 1080**

97.     بتاريخ 21 مايو 2014، أبلغ التجاري وفا بنك قطاع الكهرباء بأن آخر تاريخ مُحدد للشحن المُحدد في خطاب الاعتماد رقم 1080 قد انقضى في 30 أبريل 2014، وأن قطاع الكهرباء عليه أن يصدر تعليمات إلى البنك الشعبي من أجل تعديل آخر تاريخ للشحن المُحدد في خطاب الاعتماد رقم 1080.

- 14 -

98.   وفي 23 مايو 2014, قام البنك الشعبي بتعديل آخر تاريخ للشحن المُحدد في خطاب الاعتماد رقم 1080

من 30 أبريل 2014 ليصبح 30 مايو  2014.

**الظروف كما في 23 مايو 2014**

99.   في 23 مايو 2014، ظلت إميرلاند ترغب في توفير الفحم البخاري لتسليم الدفعة الأولى ليونايتد كولز

بموجب عقد قطاع الكهرباء رقم 415.

100.   وكحافز لتحميل الشحنة الأولى، قبلت إميرلاند ضمان التجاري وفا بنك أو خطاب الاعتماد أو خطاب

الاعتماد التعاقبي.

101.   إذا كان التجاري وفا بنك قد أصدر ضمانًا أو خطاب اعتماد أو خطاب اعتماد تعاقبي في أو قبل 23 مايو

2014، كما سبق أن وعدت، لكانت يونايتد كولز: (أ) وقعت اتفاقية شراء فحم خطية مع إميرلاند وزودت إميرلاند بخطاب

اعتماد احتياطي مقبول؛ و(ب) حملت الشحنة الأولى من الفحم البخاري على متن سفينة *مارينيك* أو على سفينة أخرى بديلة قبل

30 مايو 2014؛ و(ج) سلمت الشحنة الأولى من الفحم البخاري في الدار البيضاء طبقًا لعقد قطاع الكهرباء رقم 415, و(د)

قدمت المستندات اللازمة للحصول على عائدات خطاب الاعتماد رقم 1080؛ و(ه) حصلت على عائدات خطاب الاعتماد رقم

1080؛ و(و) قامت بتسليم الشحنة التالية ونفذت عقدي قطاع الكهرباء بالكامل.

**القرار الصادر في تحكيم أيه سي**

102.   بتاريخ 23 يونيو 2014, قبلت محكمة مقاطعة الولايات المتحدة للمنطقة الجنوبية من نيويورك عريضة أيه

إي سي بإجراء تحكيم ضد يونايتد كولز.

103.   وفي 10 سبتمبر 2014، حكم المحكمون بتعويض أيه إي سي نتيجة مخالفة يونايتد كولز لمشارطة الإيجار

بمبلغ 2,125,521.00 دولار.

**الفقرة الاتهامية 1**
**(مخالفة العقد)**

104.   تكرر يونايتد كولز المزاعم السابقة كما هي مُبينة بالكامل هنا.

105.   عرض التجاري وفا بنك عدة مرات في الفترة بين 14 أبريل و21 مايو 2014، كما هو مزعوم، بإصدار

الضمان الخاص به وخطاب الاعتماد وخطاب الاعتماد التعاقبي.

106.   قبلت يونايتد كولز جميع عروض التجاري وفا بنك.

- 15 -

107.   نشأ عن عروض التجاري وفا بنك وموافقات يونايتد كولز اتفاقية صحيحة من جانب التجاري وفا بنك من أجل: (أ) إصدار ضمان البنك؛ و(ب) إصدار خطاب الاعتماد الخاص بالبنك، و(ج) إصدار خطاب الاعتماد التعاقبي الخاص بالبنك (**"الاتفاقيات"**).

108.   تم دعم الاتفاقيات باعتبارات قيمة، شملت، على سبيل المثال لا الحصر: (أ) فتح يونايتد كولز الحساب رقم 8033؛ و(ب) امتثال يونايتد كولز لطلب التجاري وفا بنك بتنفيذ أمر تحويل الأموال؛ و(ج) امتثال يونايتد كولز لطلب التجاري وفا بنك بتخليص تنفيذ أمر تحويل الأموال مع مكتب الصرف بالمغرب؛ و(د) امتثال يونايتد كولز لطلب التجاري وفا بنك بطلب خطاب الاعتماد التعاقبي.

109.   ارتكب التجاري وفا بنك مخالفة جوهرية للاتفاقيات بعدم إصدار أي من الأدوات التي وعد بها.

110.   وكنتيجة مباشرة للمخالفات الجوهرية التي ارتكبها التجاري وفا بنك للاتفاقيات، مُنعت يونايتد كولز من: (أ) إبرام اتفاقية شراء الفحم مع إمير لاند، و(ب) تحفيز إمير لاند من أجل تحميل شحنة الفحم الأولى على متن سفينة *ماردينيك*، و(ج) تسليم الشحنة الأولى من الفحم البخاري إلى قطاع الكهرباء بموجب عقد قطاع الكهرباء رقم 415؛ و(د) تقديم المستندات المطلوبة لتحقيق عائدات خطاب الاعتماد رقم 1080؛ و(ه) تحقيق عائدات خطاب الاعتماد رقم 1080؛ و(و) أداء وتحقيق قيمة عقدي قطاع الكهرباء.

111.   وكنتيجة مباشرة للمخالفات الجوهرية من جانب التجاري وفا بنك للاتفاقيات، تكبدت يونايتد كولز المبلغ المحكوم به ضدها في تحكيم أي إي سي.

112.   إن جميع العواقب سالفة الذكر الناتجة عن المخالفات الجوهرية التي ارتكبها التجاري وفا بنك للاتفاقيات كانت مُتوقعة بصورة معقولة من جانب التجاري وفا بنك عند إبرام الاتفاقيات.

113.   وكنتيجة مباشرة للمخالفات الجوهرية من جانب التجاري وفا بنك للاتفاقيات، تكبدت يونايتد كولز تعويضًا

بمبلغ سيتم إثباته في المحاكمة لا يقل عن 7,000,000 دولار.

<u>الفقرة الاتهامية 2</u>
(الإغلاق الإئتني البديل)

114.   تكرر يونايتد كولز المزاعم السابقة كما هي مُبينة بالكامل هنا.

115.   قدم التجاري وفا بنك في المرات السابقة في الفترة بين 14 أبريل و21 مايو 2014، كما هو مزعوم، قدم

التجاري وفا بنك وعودًا ليونايتد كولز بأنه سيصدر الضمان الخاص بالبنك وإنشاء خط اعتماد لصالح يونايتد كولز وإصدار

خطاب اعتماد خاص بالبنك وإصدار خطاب اعتماد تعاقبي خاص بالبنك (**"الوعود"**).

116.   لابد أن التجاري وفا بنك كان يتوقع بصورة معقولة أن تتسبب هذه الوعود في حث يونايتد كولز على العمل

أو التحمل.

117.   ولكن الوعود في الحقيقة حثت يونايتد كولز على: الاستمرار في تنفيذ خططها لأداء عقدي قطاع الكهرباء؛

و(ب) لم تلغي مشارطة الإيجار ولم تصرف مارينيك وبالتالي استمرت في تحمل غرامة تأخير بموجب مشارطة الإيجار،

و(ج) حثت إميرلاند على مواصلة رغبتها في توفير الشحنة الأول من الفحم البخاري بموجب عقد قطاع الكهرباء رقم 415.

118.   وقد كانت عمل يونايتد كولز وتحملها بالاعتماد على الوعود معقولاً.

119.   وقد كانت عمل يونايتد كولز وتحملها بالاعتماد على الوعود متوقعة من جانب التجاري وفا بنك.

120.   أدى عدم تنفيذ التجاري وفا بنك للوعود بصورة مباشرة إلى إلحاق ظلم كبير بيونايتد كولز.

121.   وفي هذه الحالة، يمكن إزالة هذا الظلم الواقع على يونايتد كولز فقط عن طريق منحها تعويضا عن ذلك.

122.   يتمثل التعويض العادل في مطالبة التجاري وفا بنك بتعويض يونايتد كولز كليًا عن جميع الخسائر التي

تكبدتها نتيجة لعد أداء التجاري وفا بنك لوعوده.

123.   ولا تقبل يونايتد كولز بأي تعويض آخر ولا يكون كافيا لها.

وعليه فإن يونايتد كولز تطالب بإصدار حكم ضد التجاري وفا بنك يقضي بما يلي:

(A)   فيما يتعلق بالفقرة الاتهامية 1، منحها تعويضًا فعليًا وتبعيًا بمبلغ يتم إثباته أثناء المحاكمة، ولكن لا

تقل قيمته عن 7,000,000 دولار؛

(B)   فيما يتعلق بالفقرة الاتهامية 2، منح هذا التعويض بما يتناسب مع قواعد العدالة، لتعويض يونايتد

كولز عن جميع الخسائر التي تحملتها نتيجة لعدم التزام التجاري وفا بنك بأداء الوعود؛

(C)   منحها فائدة قبل الحكم وبعد الحكم على النحو الذي يسمح به القانون؛

(D)   منحها تعويضًا عن التكاليف التي تكبدتها في إقامة الدعوى؛ و

(E)   منحها أي تعويض آخر تراه المحكمة عادلاً ومعقولاً.

<u>طلب إجراء محاكمة بواسطة هيئة المحلفين</u>

طبقًا للقاعدة 38(ب)، W. Va .Civ .R. P.، يطلب المدعي يونايتد كولز إنك بموجبه إجراء محاكمة بواسطة هيئة

المحلفين بشأن جميع المسائل التي يحق لهيئة المحلفين المحاكمة بشأنها.

قُدمت هذه الوثيقة بتاريخ 5 نوفمبر 2018.

المدعي يونايتد كولز إنك
بواسطة المحامي:

<u>[يوجد توقيع]</u>
جايمس آيه فارنر  (مسجل لدى نقابة المحامين بغرب فرجينيا تحت رقم 3853)
ديبرا آ تيديشي فارنر  (مسجل لدى نقابة المحامين بغرب فرجينيا تحت رقم 6501)

إمبير بيلدينغ - 400 ويست ماين ستريت
ص. ب: دراوار 2040
كلاركسبيرج، غرب فرجينيا 2040-26302
هاتف: 1100-626 (304)
فاكس: 3035-623 (304)

ماكنير، هايلاند، ماكمان أند فارنر إل سي
للمحاماة